IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

EVA M. BURRIE                                              PLAINTIFF

        v.                        CIVIL NO. 13-2229

CAROLYN W. COLVIN, Commissioner
Social Security Administration                            DEFENDANT


## MEMORANDUM OPINION

Plaintiff, Eva M. Burrie, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under the provisions of Title II of the Social Security Act ("Act"). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. §405(g).

### I. Procedural Background

Plaintiff protectively filed an application for DIB on July 28, 2010 (Tr. 17, 147) alleging an inability to work since July 24, 2010, due to Takotsubo cardiomyopathy, stress cardiomyopathy, metabolic syndrome, hypertension, depression, and gastric reflux (Tr. 147, 169). Plaintiff's claim was denied initially and on reconsideration. An administrative hearing was held on October 6, 2011, at which Plaintiff appeared with counsel and testified. (Tr. 37-75).

At the time of the administrative hearing, Plaintiff was forty-five years of age and possessed an associate's degree. (Tr. 42-43). Plaintiff had past relevant work ("PRW") experience as a nurse

-1-

and as an assistant director of nursing. (Tr. 43,160, 170).

By a written decision dated March 22, 2012, the Administrative Law Judge ("ALJ") determined that Plaintiff had the following severe impairments: nonischemic cardiomyopathy, degenerative disc disease of the cervical spine, fibromyalgia, bilateral carpal tunnel syndrome status post surgery ("CTS"), hypertension, asthma, obesity, history of syncopal episode, depressive disorder, anxiety disorder, somatoform disorder, and psychological factors affecting medical conditions. (Tr. 19). After reviewing all of the evidence presented, however, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments. (Tr. 19). The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in CFR 404.1567(a) except she could not perform any rapid or repetitive flexion or extension of the wrists; must avoid concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases, and poor ventilation; must avoid concentrated exposure to hazards, including no driving as part of work; could perform simple, routine, and repetitive tasks; and could do work where interpersonal contact is incidental to the work performed, complexity of tasks is learned and performed by rote with few variables and little judgment involved, and supervision required is simple, direct, and concrete. (T. 22). With the help of a vocational expert ("VE"), the ALJ determined Plaintiff could not perform any PRW. (Tr. 28). The ALJ determined that Plaintiff could  perform the requirements of representative occupations such as a maid or housekeeper, laundry worker, or hand packer and that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period. (Tr. 29).

Plaintiff then requested a review of the hearing decision by the Appeals Council on May 25, 2012, (Tr. 12) which denied that request on August 19, 2013. (Tr. 1-6). Subsequently, Plaintiff filed

this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 7). Both parties have filed appeals briefs, and the case is ready for decision. (Doc. 12, 13).

## II. Applicable Law.

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that has lasted at lease one year and that prevents her from engaging in substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical,

physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993)

The Commissioner's regulations require the application of a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her RFC. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

## III. Discussion

The Court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is not supported by substantial evidence.

### A. Development of the Record:

Plaintiff argues that the ALJ failed to develop the record because the ALJ should have contacted her cardiologist and neurologist and did not look at all of her alleged impairments. (Pl. Br. 12).

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995). This duty exists "even if ... the claimant is represented by counsel." *Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). The ALJ is not required to act as Plaintiff's counsel, but only to develop a

reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment. They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Matthews v. Bowen*, 879 F.2d 423, 424 (8th Cir. 1989).

The record shows Plaintiff underwent a nerve conduction study (Tr. 499) and an MRI of her cervical spine (Tr. 500) after complaining to her neurologist, Dr. Tonya Phillips, that she "felt that her balance was not quite as good" and had "numbness, tingling, and weakness in her arms and hands." (Tr. 485-487). Plaintiff was diagnosed with "bilateral median mononeuropathy, moderate to severe, slightly worse on the right side" by Dr. Phillips (Tr. 489). The diagnosis that indicated CTS was confirmed by Plaintiff's neurosurgeon, Dr. Jorge Alvernia. (Tr. 518, 521). After successful surgery on her right side (Tr. 514-515), Plaintiff reported to Dr. Alvernia on her two follow-up visits that the pain in her right hand had disappeared. (Tr. 602-605).

Turning to Plaintiff's heart condition, a review of the record shows that in January 2010 a cardiac catherization, angiogram, and echocardiogram demonstrated Plaintiff had no significant coronary heart disease, but showed she had a decreased ejection fraction of forty-five percent. (Tr. 254-257, 260-261, 386-388). She was diagnosed with cardiomyopathy by Dr. Ronald Kantola. (Tr. 260-261). On February 4, 2010, Plaintiff again saw Dr. Kantola who advised her to return to work in a couple of weeks. (Tr. 378). On March 22, 2010, Plaintiff had another office visit with Dr. Kantola who noted that he "originally thought she had stress-induced cardiomyopathy or Takotsubo [but] it appears she has nonischemic cardiomyopathy" because a new echocardiogram showed

Plaintiff's ejection fraction was fifty-percent. (Tr. 377, 386). Dr. Kantola also wrote that "she has no specific complaints today ... she did have an episode of chest discomfort on Saturday that lasted for about fifteen minutes." (Tr. 377). Plaintiff was next admitted to the ER on June 20, 2010 with complaints of chest pain and jaw pain. (Tr. 296).  A chest x-ray ruled out a pulmonary embolism. (Tr. 316-317). Plaintiff saw Dr. Kantola again on June 25, 2010 and on July 16, 2010. (Tr. 374-375). Dr. Kantola noted after the July visit that there was some concern she had "stress-induced cardiomyopathy or Takotsubo" and that she "may need to have a reevaluation of her medications for anxiety." (Tr. 375).

Plaintiff switched cardiologists in October 2010 when she began seeing Dr. Julio Schwarz. and underwent a two-dimensional echocardiogram and Doppler study. (Tr. 453-454). After reviewing the test results, Dr. Schwarz determined that Plaintiff showed "no evidence of stress induced ischemia" and advised plaintiff that this meant "the risk of having a heart attack is that of the general population, which is 1% per year." (Tr. 451). Dr. Schwarz noted that "as it usually happens Takotsubo cardiomyopathy has recovered now with normal left ventricular systolic function." (Tr. 451-452).

 A review of the record shows that the ALJ was presented with sufficient medical records to determine the merits of Plaintiff's DIB claim. In his written decision, the ALJ specifically discussed Plaintiff's visits to her neurologist and cardiologist, the battery of heart exams she underwent, her diagnosis of carpal tunnel syndrome, and her successful neurosurgery to decompress the right median nerve at the carpal tunnel on her right side. (Tr. 23-24, 26). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (8th Cir. 1994). Given the

amount of evidence analyzed in the ALJ's written decision and the Court's deference to the ALJ when deciding if the record is fully developed, the Court concludes the ALJ met his basic duty to fully and fairly develop the record..

**B. Residual Functional Capacity:**

RFC is the most a person can do despite that person's limitations, and is assessed using all relevant evidence in the record. 20 C.F.R. §404.1545(a)(1). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393. F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404. 1545(a)(3). A "claimant's RFC is a medical question, therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). The ALJ is required to set forth with specifics a claimant's limitations and to determine how those limitations affect a claimant's RFC. *Id.*

**1. Credibility Analysis:**

In determining a claimant's RFC, "the ALJ must first evaluate the claimant's credibility." *Pearsall v. Massanari*, 274 F.3d1211, 1217 (8th Cir. 2002). The ALJ is required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.

-7-

1984).While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. It is well established that "credibility is primarily a matter for the ALJ to decided." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). "The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). The Court should, "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).

Plaintiff argues that the ALJ did not give sufficient reasons for his credibility determination and failed to consider the *Polaski* factors.  (Pl. Br. 12-14). The written decision shows, however, that the ALJ considered Plaintiff's daily activities, descriptions of pain,  precipitating and aggravating factors as well as the limitations and activities Plaintiff detailed in her Function Report, testimony, and discussed with her physicians. (Tr. 24). After considering these *Polaski* factors, the ALJ identified several inconsistencies between Plaintiff's subjective complaints and the rest of the evidence in the record. Specifically, the ALJ found that Plaintiff's subjective complaints were contradicted by her loss of thirty pounds from walking during the period of her alleged disability (Tr. 24), the road trips that she took with her husband, a truck driver (Tr. 24), her testimony exaggerating the number of times she met with her psychiatrist (Tr. 26), and her failure to seek treatment after April 2011[1] (Tr. 25). The ALJ also found that Plaintiff's testimony at the administrative hearing exaggerated her

---

[1]The ALJ appeared to place special weight on the fact that Plaintiff was receiving approximately $2,000 a month in disability benefits already and should have been able to pay for medical treatment. (Tr. 25, 64-65). Although not error, Plaintiff reported to Dr. Kathleen Kralik, whose opinion was given substantial weight by the ALJ, that she was in bankruptcy proceedings and struggling financially. (Tr. 456).

limitations, especially her testimony regarding her incontinence, because she did not describe her limitations as having the same severity to her physicians. (Tr. 25).

A review of the record indicates that there was substantial evidence to support the ALJ's credibility determination. In addition to the facts referenced by the ALJ, the record shows that Plaintiff submitted inconsistent Function Reports (152-159, 190-197), she told Dr. Kathleen Kralik at her Mental Diagnostic Evaluation that she was driving and had recently earned her CDL license and that in her free time she sat outside and tried to crochet (Tr. 461), but reported at her hearing and in her Function Reports that she could not drive herself or grip small objects (Tr. 59-62, 193), and she testified that she could not walk farther than "across the room"(Tr. 59-61) but she did not use assistive devices. Despite the existence of some facts such as Plaintiff's work history that gave weight to her credibility (Pl. Br 13), the ALJ's credibility finding was supported by the objective medical evidence in the record. *See Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010)(deferring to the ALJ's credibility determination because the objective medical evidence did not support the claimant's testimony).

The ALJ also considered the *Polaski* factors and discussed Plaintiff's inconsistent statements and behavior that affected her credibility. Plaintiff correctly points out that the ALJ did not reference Plaintiff's medications in his analysis or specifically cite *Polaski*, but this does not amount to error because the ALJ considered some of the factors. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011)(affirming an ALJ's credibility determination despite no citation to *Polaski* since the ALJ still discussed four *Polaski* factors). Reading the ALJ's opinion as a whole, the Court finds that because the ALJ considered the *Polaski* factors and provided a reasonable explanation for discounting Plaintiff's subjective complaints the ALJ's credibility determination is entitled to deference. *See*

*Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012).

> **2. RFC Determination:**

The ALJ found Plaintiff could perform light work with several additional limitations, most notably that Plaintiff had manipulative limitations and could not work in an environment with high stress or significant interpersonal contact. (Tr. 22). Plaintiff argues, however, that the ALJ erred by failing to include all of her limitations in the RFC assessment (Pl. Br. 18), and erred by giving improper treatment to some of the opinion evidence. (Pl. Br. 17).

Plaintiff submitted a physical and mental RFC assessment from her treating physician, Dr. Carolyn Dillard (Tr. 544-550), and a mental RFC assessment from her treating psychiatrist, Donald Chambers. (Tr. 587-590). Dr. Dillard opined in her physical RFC assessment that Plaintiff had severe limitations on her ability to use her hands and could only sit/stand/walk for a total of five hours in an eight-hour work day.  (Tr. 544-546). In her mental RFC assessment, Dr. Dillard opined that Plaintiff had a number of marked to extreme limitations that would prohibit her from functioning in the workplace.  (Tr. 546-550). Dr. Chambers' opinion was that Plaintiff had a number of mild or moderate limitations, and that Plaintiff had a marked limitation to remember detailed or complex instructions or maintain concentration for extended periods of time. (Tr 587-590).

The record also included physical and mental RFC assessments from the State's consulting physicians and a mental diagnostic evaluation with the State's examining physician Dr. Kathleen Kralik.   In two physical RFC assessments, the State's consulting physician, Dr. Charles Friedman (Tr. 416-422, 493-497), opined Plaintiff had no significant limitations and that Plaintiff's RFC was medium work (Tr. 422). His opinion was affirmed by Dr. Patricia McCarron. (Tr. 539-543). While Dr. Friedman's did not have Plaintiff's restated subjective complaints in the second Function Report,

this information was reviewed by Dr. McCarron.

For Plaintiff's mental abilities, Dr. Kralik found in her evaluation that Plaintiff had some mental limitations and estimated that Plaintiff's current global assessment of functioning ("GAF") was 45-55 and typically 50-60. (Tr. 455-462). Specifically, Dr. Kralik opined that Plaintiff had some mild to moderate impairments as well as a moderate impairments in her persistence in completing tasks and ability to communicate in a socially adequate manner. (Tr. 461). The State's consulting physician, Dr. Sheri Simon, opined in her mental RFC assessment that Plaintiff was capable of unskilled work (467-483), an opinion affirmed by Dr. Christal Janssen. (Tr. 523-530).

The ALJ's written decision established that the ALJ was familiar with Plaintiff's record. The ALJ noted the sources that he considered and assigned a specific weight to each source. The problem is that the ALJ discounted so many sources that it is not clear how the ALJ could have based the RFC he assigned on substantial evidence. The ALJ discounted the treating physician's opinions about Plaintiff's physical limitations because "the records from Dr. Dillard [did] not show symptoms or even reports of symptoms that would support such extensive limitations." (Tr. 25). Further into the written decision, the ALJ also discounted Dr. Dillard's opinions on Plaintiff's mental RFC because Dr. Dillard was not "a specialist in this field, and the [Plaintiff was] seen by specialists who [did] not find her as limited as Dr. Dillard." (Tr. 27).[2]

There are times Courts will uphold the ALJ's decision to discount a treating physician's opinion: (1) where [the one-time] medical assessments are supported by better or more thorough medical

---

[2] The ALJ, however, does note that Dr. Dillard's opinion regarding Plaintiff's environmental limitations deserved some weight stating, "while the records do not support the full extent of the environmental limitations stated in her opinion, they show the claimant does have some limitations." (Tr. 25).

evidence, or (2) where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000); *Anderson v. Barnhart*, 344 F.3d 809, 812-813 (8th Cir. 2003). Here, the ALJ reasonably discounted Dr. Dillard's opinions about Plaintiff's mental RFC because Dr. Dillard was not a specialist and it was reasonable to give more weight to the mental RFC evaluation completed by Plaintiff's treating psychiatrist, Dr. Chambers. *See Brown v. Astrue*, 611 F.3d 941, 953 (8th Cir. 2010)("Greater weight is generally given to the opinion of a specialist about medical issues in the area of specialty, than to the opinion of a non-specialist."). The ALJ, however, did not reasonably discount Dr. Dillard's opinion regarding Plaintiff's physical RFC.

Contrary to the ALJ's written decision, a careful review of the medical record shows that Plaintiff presented her symptoms and limitations to Dr. Dillard. For instance, Dr. Dillard was the physician that prescribed several of Plaintiff's heart and anxiety medications, (Tr. 430, 432, 434) and Plaintiff had complained to Dr. Dillard about numbness in her arms post-carpel tunnel surgery (Tr. 436). As noted by the ALJ in his written decision, Plaintiff "presented to Dr. Dillard with body aches located diffusely in her joints ... Dr. Dillard wrote that the claimant's complaints moderately limited her activities" (Tr. 24, 575). The ALJ even quoted Dr. Dillard's description of Plaintiff's symptoms a second time and stated:

> Dr. Dillard noted in January 2011 that the claimant's pain caused moderate limitations, and Dr. Dillard noted in April 2011 that the claimant continued to have joint pain. However, Dr. Dillard did not state that the claimant had experienced any worsening of her condition in the meantime, and her examination showed no particular limitation. ... less weight must be given to Dr. Dillard's opinion."

(Tr. 25). Further, the series of visits the ALJ cited include a visit on January 26, 2010 where Plaintiff described pain in her arms prior to carpal tunnel surgery as an 8 on a scale of 1-10 (Tr. 429); a visit

-12-

on November 16, 2010 where Plaintiff complained of sudden onset numbness that started two months ago and "decreased sensation in her grip" (Tr. 436); and a visit on December 16, 2010 where Dr. Dillard noted "[Plaintiff] presented with wrist pain. It is located on the left and on the right. It is described as chronic." (Tr. 572). The Court is concerned by the ALJ's mischaracterization of Dr. Dillard's medical record notations, which showed that Plaintiff complained of pain and numbness in her arms and a limitation in gripping objects.

After discounting Dr. Dillard, the ALJ was left to rely on the opinions in the physical RFCs from the state's consulting physicians. This already is troubling. Courts have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially the case when the consultative physician is the only examining doctor to contradict the treating physician. *Id*; *Cox v. Barnhart*, 345 F.3d 606, 610 (8th Cir. 2003). What is more troubling is the ALJ next discounted the opinions from these physicians. In one paragraph of the written decision, the ALJ wrote:

> "the state agency consultants did not find that the claimant had any nonexertional limitations. That opinion is not consistent with the evidence as a whole and is discounted. The evidence, instead, supports finding that the claimant can do work at the light exertional level."

(Tr. 24). And the ALJ wrote later, "the state agency medical consultants's opinion is discounted because it is not consistent with the record as a whole, and does not take into account the claimant's subjective complaints of pain." (Tr. 28).[3]

_____

[3] It's not clear why the ALJ believes the State consulting physicians did not take into account Plaintiff's subjective complaints. As noted above, the first two physical RFC assessments by Dr. Friedman pre-dated Plaintiff's revised Function Report, but Dr. McCarron

-13-

After discounting both the treating physician and the State's consulting physicians' opinions about Plaintiff's physical RFC, it is not clear why the ALJ adopted some of the limitations expressed in these opinions and not others. The ALJ appears to have independently arrived at an RFC of light work and searched the record for evidence to support his RFC determination. "An administrative law judge may not draw upon his own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000). Similarly, the ALJ is not allowed to selectively pick from evidence in the record to support his preferred finding. *Taylor v. Barnhart*, 333 F. Supp. 2d 846, 856 (8th Cir. 2004) (Citing *Confere v. Astrue*, 235 Fed. Appx. 701, 704 (10th Cir. 2007) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of non-disability")).

Plaintiff's remaining arguments are that the ALJ should have provided a more individualized RFC regarding Plaintiff's mental limitations and failed to include additional limitations. The objective medical record as well as Plaintiff's subjective complaints showed that Plaintiff had numbness in her arms and hands; that Plaintiff testified at the administrative hearing that she would have difficulty lifting as much as five pounds (Tr. 59); that Dr. Dillard noted Plaintiff had abnormal grip in both upper extremities and opined in a physical RFC assessment that Plaintiff could only occasionally lift five pounds and rarely lift ten pounds (Tr.544); that a December 2010 nerve conduction was abnormal and consistent with bilateral median mononeuropathy, moderate to severe, slightly worse on the right than left (Tr. 489), and that Plaintiff had not had surgery to correct her CTS on her left side. While the ALJ discussed Plaintiff's manipulative limitations and ability to hold objects (Tr. 24), these findings were not incorporated as limitations in the ALJ's RFC determination.

---

evaluated Plaintiff's updated subjective complaints when she affirmed Dr. Friedman's decision.

The ALJ only concluded that Plaintiff must avoid frequent rapid, repetitive flexion/extension of the wrists bilaterally. (Tr. 22).

The Court notes that repetitive tasks that require bending of the wrists or grasping with the hands, including typing, cutting, sewing, overuse of small hand tools, and use of vibrating tools are factors that can contribute to the development of CTS. See Physician's Desk Reference, Carpal Tunnel Syndrome, http://www.pdrhealth.com/diseases/carpal-tunnel-syndrome (Last accessed October 24, 2014). It seems reasonable that an individual who has undergone corrective surgery for CTS might need to avoid these activities, which do not just involve the rapid and repetitive use of their wrists. On remand, the ALJ should reassess the limitations imposed by Plaintiff's CTS.

Finally, the ALJ did not properly account for Plaintiff's mental limitations in the assigned RFC. Dr. Kralik's evaluation indicated that Plaintiff was mildly to moderately impaired in a number of mental categories, and that Plaintiff's most significant impairments were a moderate impairment in "her ability to communicate and interact in a socially adequate manner" and a moderate impairment in "her capacity to sustain persistence in completing tasks." (Tr. 461). Dr. Chambers opined that Plaintiff had a number of mild or moderate limitations, and that Plaintiff's most significant limitations were a marked limitation in her abilities "to remember detailed or complex instructions" and "maintain concentration for extended periods of time." (Tr. 587-590). As noted on the evaluation form Dr. Chambers completed, marked means the limitation is one that "very seriously impairs the ability to perform work activities by interfering with either social relations or occupation functioning or sometimes both." (Tr. 587). The ALJ's RFC accounted for some of the limitations that Dr. Kralik and Dr. Chambers identified, but did not account for Plaintiff's limitation in her ability to maintain concentration for extended times or sustain persistence in completing tasks. The ALJ should address

-15-

these limitations on remand.

**C. Step Five & Hypothetical Question**:

In Step Five, the Commissioner was required to prove that Plaintiff retains the RFC to do other kinds of work, and that other work exists in substantial numbers in the national economy that Plaintiff is able to perform. *Nevland,* at 857 (8th Cir. 2000). The purpose of testimony from a VE is for the ALJ to determine whether jobs exist for someone with claimant's precise disabilities. *Jelinek v. Bowen*, 870 F.2d 457, 459 (8th Cir. 1989). It is generally accepted that VE testimony, in response to a hypothetical question, is substantial evidence if the hypothetical sets forth the credible impairments with reasonable precision. *See Starr v. Sullivan*, 981 F.2d 1006 (8th Cir. 1992).

In this case, it is impossible to determine if the hypothetical question was based on a complete set of Plaintiff's abilities and limitations because the RFC was not based on substantial evidence. Because the court is remanding this matter to the ALJ for further consideration of Plaintiff's limitations, the ALJ's hypothetical question and analysis may change.

**D. Conclusion:**

Accordingly, the Court finds that the ALJ's decision is not supported by substantial evidence, and, therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

/s/   *J . Marschewski*

HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE
JUDGE

-16-